Good morning, your honors. Janelle White for the appellant Ashley Noonan in this matter. A code of silence and the use of shame are two classic methods to enforce disparate treatment on the basis of sex, and their use of both in this case are circumstances which show an unlawful discriminatory motive by the defendant employer. There is a fundamental difference between what the defendant employer wishes to focus on this matter and the question the district court should have considered but failed to and what this court should now consider. Counsel just so I understand because this we are in I think a somewhat unusual posture so you are not challenging on appeal the district court's findings with respect to your substantive Equal Pay Act claim or the district court's holding that there was no sufficiently similar comparative or purposes of title 7. Correct we are not proceeding on the Equal Pay Act claim or the title 7 version of what I call the Equal Pay Act light analysis. Okay so as putting to one side retaliation your only argument is one that was not addressed by the district court. Correct which we did address in our briefs. You did in your briefs but it's not in your complaint right it's not a theory of liability under count three. No it is it is addressed in our complaint I think under we we certainly pled the specific facts. You pled the facts but you didn't plead the theory of liability in count three which I am guessing is why the district court didn't address it. No we pled title 7 and this is just. You pled title 7 but you pled title 7 under a comparator theory like there's one allegation in count three and it's that she was paid less than this comparator who did the same work. No your honors what your honor what we pled was that she was treated disparately for under title 7 and so that encompasses both theories. I mean I thought your argument was going to be different I thought your argument was going to be that it didn't matter that you didn't plead it in count three but can you show me in count three where you have anything but what is specifically a comparator claim? Oh we addressed it in our reply brief. No in your briefs I know but I'm trying to figure out if it's in your complaint. Yes and I cited to the specific specific portions of our complaint where we address that. Okay I'm looking for it in count three which is the title 7 count. And what I see is that the company discriminated against your client based on her sex because it paid a male employee higher wages even though he performed substantially the same work had essentially the same level of skill and worked under substantially the same conditions as Culpepper. So a comparator claim. So paragraph 3 of the complaint so at the beginning of the complaint. I totally agree with you that the facts that you're relying on are listed in the factual portion of your complaint but I I mean I don't I don't mean to belabor the point but the district court didn't address this theory I think because it wasn't alleged in count three and so I'm trying to figure out is it your contention that you can preserve a theory of liability by putting it in your briefs instead of amending your complaint. Yes your honor and and I just want to say paragraph 3 we allege that Consolidated Shoe Company violated title 7 of the Civil Rights Act of 1964 when it's subject Culpepper to disparate treatment comma including unequal pay for the work she performed comma based on her sex. So it did not it said including but it did not limit itself to that so we certainly pled she was subjected to disparate treatment under title 7. So your argument just so I understand I feel like you could have two arguments today one is no no it we allege this theory of liability in the complaint and the other one is no we didn't but it's in our summary judgment it's in our I believe your reply on summary judgment. Your opposition your opposition on summary judgment and that's good enough like that effectively amended our complaint which which argument are you making are you making both? I think it's more of the former the first argument your honor in that this court has said there are no magic words that are required under pleading under Twombly and Iqbal all you all you have to do is is have plead the facts and and so that you don't necessarily have to state a specific statute or or case that your theory that you're proceeding under there are no magic words required is is what this court has said but I do believe that we said we were claiming a violation of title 7 and proceeding under this Gunther and Lindsay analysis is it's just a version it's a different version of a title 7 claim. Can I ask it a different way so I'd read your claim in paragraph 141 your argument is being the lesser included piece of that I took your argument to be that even if you eliminated what comes after the the colon right in paragraph 141 where you say significantly higher wages than Culpeper higher based on what metric right so one is just a pure number and the other is higher relative to some you know some statistical comparator right that is the market rate that's that's not the argument you're making I'm just trying to make sure I understand I understand the two arguments that the judge Harrison suggested right but I I took what you were saying there or at least an argument for what you were saying there was that the theory is included because even if he's not substantially the same were same level of skill substantially the same conditions so if you deleted everything that comes after the colon that's basically your claim right the fact that he was paid more as a percentage of the industry standard is is sufficient in your view to make that claim correct your honor I think that's a fair reading of that as well and so there's just a fundamental difference in what the defendant employer wishes to focus on in this matter and the question the district court should have considered what the plaintiff seeks to prove at trial is the defendant employer established the appropriate pay for plaintiff's job and Liz McDade's job and first name Monica's job and then paid the women incumbents in those jobs less than the industry standard and to what even their own supervisor in her deposition testified was fair Ashley Newton was hired as the content marketing coordinator for CSE in 2016 she she had asked for a salary of 46,000 because that was similar to what she had previously been making she was offered 37,000 this eventually settled on 39,000 in 2018 nearly two years later when they began searching for a graphic designer a job which actually knew and had been doing in this mix of things that she had been doing since she was hired they eventually landed on Matt Weiss he was offered 45,000 there is a memo it's an exhibit as part of the appendix where it said 45,000 max underlined for what they were going to pay the graphic designer he rejected that and then demanded a salary similar to what he had already been making and then was eventually at the same time in the same time frame where Ashley Newton was asking for a raise and was told no we're not doing any raises they found the money to pay him the 68,000 and during that same time frame is when Ashley's supervisor Christina Petrick sent a budget request email reproduced at Joint Appendix 1352 can I ask you about you're not appealing the comparator correction which was the district court saying that these two people did different jobs and the gentleman did a job that required more skill and you know in different areas and so he was paid more doesn't that resolve the question even if you have a prima facie case and that the burden comes back it goes to the employer they say look the district court said he did a different job that required more skill and doesn't it now come back to you on pretext and and what do you have on that no your honor because it's it's the wrong question so that the question is we're assuming okay it's fine to pay Matt Weiss the $68,000 a year that's fine but when the employer then as succinctly stated in the email at Joint Appendix 1352 when they go through and say yeah Matt Weiss is the industry standard for his job is 70,000 and we're paying him 68 the industry standard for all of the women in the marketing department that's not the evidence you have is it you have an email where that the her boss used these numbers and to try to get a raise but she testified that that's it didn't actually represent the job accurately that this was not the industry standard for the job she actually did this is not like those cases where the employer did a market and had a internal assessment of exactly what it thought this job was worth and it paid the women less you don't this is not an assessment of what this job was worth I think that's there's no evidence on the other side of that yes your honor I believe that there is because it what the HR director testified and what Petriek testified the supervisor testified to was that in in generating these figures their normal policy was to go to salary.com and sort of look at that and what the HR director testified is as we usually go with that that's sort of their policy they did not do that in this case and that's how Petriek generated the numbers importantly didn't you say I mean she said these numbers were for photographers which is not what client did your client was a writer and you know etc etc there was there are explanations about how this number is not an accurate a number from the company's perspective or what this job was worth yeah and we're here on summary judgment the standard of which is that the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought and that's my client and what my client's testimony is is that actually photography was her main that was mainly what she did that's what she spent majority of her time doing is photography and so there is certainly a factual dispute because that's one of the bases for our retaliation claims that then they started taking away her core job responsibility which was photography and that's represented in her testimony in the record is that and that was her title senior photographer so so that is certainly that's a factual dispute that that we believe should go to the jury and so what there were two there are two cases there's the Gunther case County of Washington versus Gunther which was a 1981 case where the United States Supreme Court has sent it back they affirmed the Ninth Circuit and said even if you have a unique position you can still make a title seven you do not have to have a comparator in order to make a title seven claim and and what the Ninth Circuit found important in Gunther was the testimony of the sheriff who said that they had evaluated the worth of the jail matrons job as compared to the to the male deputies who 95% of what the that's what they deemed that they should be paid however they were only paid 70% of what the the male correction officers made and importantly the sheriff testified that he had advocated for them to be paid more and that is exactly what we have in this case because we have the testimony of plaintiffs own supervisor even if we don't go as judge rushing was pointed out even if if there's some dispute about whether that industry standard is the correct number what we have is an admission by plaintiffs own supervisor that she was being paid unfairly for her position she testified what their problem is that doesn't matter right people can get underpaid for lots of reasons right what you have to show that she was getting underpaid because of her not so the fact that she believed they're all in fact the evidence shows that this supervisor like many really good supervisors believes all of our people are being underpaid every single one of them she believed everybody was underpaid which is what a supervisor does right they go advocate for their people and so the fact that she believed that everybody was underpaid doesn't help you with respect to your client does it it helps get to the first part of is there is there a suggestion of an unlawful discriminatory motive because it's one factor for the court to consider and there at least she thought the men and the man it's only one but the man and the women that she thought everybody was underpaid literally everybody she just thinks this is a bad company right which is but like we're not in that business right no your honor she said that Matt Weiss the man was fairly paid for his position and that only the women were being on he saw she sought a pay increase for him no she did not she did not that is that her testimony at that we cited several times in the joint appendix it's in her deposition but she testified I think you've testified it was what the women were being paid was too little I agree and what he was being paid was the correct amount for his position I agree that was her testimony she agreed that he was being paid the correct amount for his position in your originations she did not when she was seeking raises she did not seek a raise for him correct that's what the email says the email says that we're not seeking a raise for Matt Weiss because he's just started and he's and she testified that she believed he was being paid the correct amount and there are at least seven other things to consider when considering whether there is evidence of circumstances which portray an unlawful discriminatory motive the first being the use of a policy of pay secrecy to cover up an attempt to silence her when she tells her boss that she believes she's being paid unfairly she is threatened with termination the second is the most important I know you said that you had seven and you're a bit over time so maybe you can just summarize and then you'll have rebuttal time yes your honor and to get to the second factor which I think is the most important is the attempt to shame my client when she asked for that raise when she told her boss she thought she was being paid unfairly she was asked is money the most important thing to you the Peli brushes it off as a stray remark and it's clearly not under this court's precedent as it was made by one of the decision makers it's an act of vulnerability to go and ask for a raise and she was made to feel less at that moment and to contrast that with the treatment of the mail just a month later he asked for a raise and he was not asked that question he was not shamed for asking for a raise instead was given additional vacation time I would note the Fifth Circuit has commented that this is that the what the email encompasses the valuation of the jobs and paying the women less than the value of those jobs is direct evidence of discrimination council and we're gonna ask you to thank you yeah save it for you still have five minutes on rebuttal may it please the court good morning I'm Monica Monday on behalf of consolidated shoe company we are indeed in an unusual posture in this case both because we have the principal lead argument on title 7 is a position that was not played there is no allegation in the complaint of a pattern and practice of discrimination or as we reference the specific paragraph paragraph 141 of the complaint there is no allegation of some type of wholesale mistreatment of women as compared to men additionally we have the district court's dispositive finding that the reason given by consolidated shoe company for any disparate pay was a legitimate non-discriminatory reason and that forecloses any pretext argument so essentially the title 7 claim is not properly before the court I ask you a question about the question of whether this claim is sort of preserved or was properly in front of the district court I mean all of the facts underlying the fact this email asking for reasons that that is spelled out in the complaint and you did depose the writer of the email about it is there anything else you would have I mean is it your view that you really were not on notice of this kind of pattern and practice claim and is there anything else you would have done in discovery had you been on notice I don't think that I could point to anything specific your honor but what we also have here is just not enough evidence of intentional discrimination to create a jury issue so even setting aside whether or not it's properly played and of course it was raised at summary judgment interesting interestingly we do not have the transcript of the summary judgment hearing with the judge and I was not present so I cannot state what happened during that hearing in terms of how the judge may have approached the absence of a theory you know put in the complaint but turning to the intentional discrimination part let me let me focus on the arguments that have been made here and principally miss Noonan relies upon the Gunther case United States Supreme Court case but that case presented a very narrow question to the Supreme Court and the Supreme Court explicitly stated that it was not determining whether the evidence that was presented was sufficient and that's in footnote eight of the opinion it was a very narrow issue so basically the lead support is a case that didn't even reach the sufficiency issue that would be before the court today but let me turn to the email evidence that has been referenced why is this on its own simply insufficient to create a jury issue it's several reasons first this is not on the Internet the email which is interesting doesn't even have this information attached to it it's simply her opinion and she acknowledged this is what the record reflects is that it was simply her opinion about what would be fair you know not non-discriminatory but fair she was trying to get raises for her employees this also was not the company's policy so it's very different from Gunther or for example the Lindsay the Second Circuit case that has been cited where the benchmarks that were used were the employers benchmarks so what did miss Newton supervisor do when she did this informal research on the Internet she sent it not to the CEO of the company not to a decision-maker in the company but to a someone in the finance department a co-worker and she just said I'm just trying to get raises for my people now I want to respond to this I think judge Harris may have mentioned this or judge Rushing mentioned it it wasn't even the right benchmark she used a photographer what she thought the industry standard should be or what a fair rate would be for a photographer and she acknowledged in her deposition I'll cite you to the page records in the joint appendix she said this wasn't the right benchmark and I think the reason is because Miss Newton performed a hybrid job she performed a different kind of job and this came on the heels of financial distress of the company we're just a few months before this raise request was made two people in the marketing department were laid off for financial reasons so this was not an appropriate benchmark to use it was not a benchmark that was endorsed by the company and it was using the wrong data now how ironic would it be that someone who is trying to get raises for their employees would then be charged with intentional discrimination and what bad policy we who would go and advocate for their employees if they thought that that advocacy would result in a claim for intentional discrimination let me address the question that judge Richardson asked which was about mr. Weiss she did not ask for a raise for mr. Weiss and the reason is because he had just been hired the prior year and that supervisor had been the one that hired him and she again had advocated for one of her people to get hired just like she was doing here when Miss Noonan was hired she was hired by a different supervisor back in 2016 mr. Weiss was hired by Patrick in 2018 so we have completely different circumstances but what do we have here not a supervisor's advisor that's trying to discriminate but a supervisor who is trying to get her employees paid and better salary but the company was in financial distress so what is the email response back from the finance department say can't do it now and then a few months after that we're in the midst of kovat and then the company suffered even a more dramatic financial decline and it resulted in the plaintiff and mr. Weiss being laid off so this evidence is simply not sufficient to can you talk to me just a second about the use of statistical evidence in this context we think about statistical evidence in the disparate impact world just not the world we're in here and when I think about using a comparator right that's sort of a way of saying a statistical difference or just a difference between two people is meaningful right that is it it moves from correlation to causation in the context in which they do substantially similar work right but in in the context that we have in can you talk you know about whether you could use statistical information alone to satisfy the prima facie case without the use of a comparator and without direct evidence of discrimination does that does that work have you seen that happen I mean you just are from it more familiar with these cases it strikes me it's like an effort to take disparate impact and sort of have disparate impact satisfy the disparate treatment standard but you theoretically can but you typically have more evidence than just that and and for example you know the the Lindsay case from the from the Second Circuit it was it was a more of a similarly situated position which we do not have here and it was also benchmark data that the employer itself had endorsed so that was much different and it was also combined with intentional discrimination evidence of intentional discrimination in the form of comments repeated comments by the CFO of the company about you know disparaging women and right I'm not suggesting you can't use statistics at all right obviously Lindsay if they're if they're similarly situated in in some manner then maybe that data is relevant but what I'm trying to understand is in the scenario where we're conceding at least for this purpose that they were not similarly situated and we're comparing one man and at least for two women and their salaries it seems like to show there's a statistical difference there that doesn't tell us anything it doesn't tell us anything and so even if you could use statistical data I think what's really missing here is we're only comparing it to one man you know what what meaningful comparison can be drawn by simply one man who's performing a different job based upon the you know an uninformed you know unendorsed opinion by the by a supervisor it's not a it's not an appropriate comparison it's not enough data to prove any type of pattern that you would have here when you just have one male that you're trying to point out so even though theoretically you could might be able to have a case where you could appropriately use good statistical data this is not good statistical data it's theoretical but it wasn't it's not something that we have here it is not enough here plus we don't have evidence that could even come close to demonstrating any kind of intentional gender discrimination based upon pay when we've got a you know a supervisor advocating for pay increases but unfortunately in an environment where they could not be made so moving I guess just briefly to the retaliation claims in in in the Burlington case from the United States Supreme Court the court has been very very clear that the law does not protect workers from all retaliation but just retaliation that causes significant harm or injury so it has to be something that is material and materially adverse and is done because of the pay complaint so there have been three different arguments presented and on the retaliation claim I'd like to address each one in turn first Noonan claims that she was retaliated against because her supervisor told her that she could be fired for knowing in another another employee's salary the bottom line here is is that there was no adverse action taken there was no action whatsoever and the reason is because the supervisor was wrong about her statement and Noonan in fact when when the statement was made Noonan said well you're wrong I mean she she wasn't even dissuaded by this she she came right back out and she said no you're wrong she confirmed it through the HR department and then five days later she makes a complaint to the CEO of the company she was not dissuaded by that and there was no adverse action also I just want to make sure I understand your position on this um you're saying if your supervisor threatens to fire you for protected activity if you know like actually they better not do that that's illegal then that doesn't count as material adverse because I thought material adverse materially adverse means would it dissuade a reasonable person from engaging in the protected activity and wouldn't a reasonable person think twice about engaging in protected activity if last time they did it their supervisors threatened to fire them well and your honor it was it was not a threat to fire and the courts been very clear have to look at context have to look at all the circumstances I understand that the follow-up circumstances I'm trying to figure out what is your position about how much of that follow-up was necessary because it sounded like you were saying look she knew it's against the law to fire someone for engaging in protected activity so that per se almost it can't be materially adverse and I guess I'm just sort of pausing on that because that seems not intuitive if we understand materially adverse to mean it might stop you from doing it next time sure but I think what we have to look at here are the circumstances and so this was an employee who knew the handbook and the handbook doesn't I mean again this was an incorrect statement so so and in the plaintiff knew that which is why she was not dissuaded and why a reasonable person in her situation would not have been dissuaded the employee handbook actually says it's confidential that's been changed I don't have employees um you know there's stuff in a handbook you know there's stuff in title seven that protects you but if but employers don't always follow the rules that's the concern I think that if someone just I understand you if someone could hear what was said as a threat to fire them because they engage in protected activity knowing that your employer is not supposed to do that doesn't necessarily solve the problem but it's also relevant the context that it happened in your honor and it was it was in a very quick fashion it was corrected the supervisor actually corrected it and apologized and we know that the plaintiff went to the HR department to confirm her understanding that that was correct also point out that the employee handbook which clearly Miss Noonan was familiar with right below that statement it says that they encourage employees to ask questions about their compensation with their supervisor and on the first page of the policy it states the EEOC EEOC policy and also states that they encourage workers to communicate about any questions and concerns they have and clearly under the circumstances here the employee was not dissuaded and no reasonable employee would have been dissuaded because they actually were in an environment where all of these other circumstances had happened including an apology and a correction and then the employee five days later is making the same complaint to the CEO so there was no dissuasion here there's not ask you another another retaliation that's alleged here is the failure to give a reference and this materially adverse this distinction comes up there as well where the question isn't did it dissuade her where you know maybe it didn't because she ultimately got the other job even without the reference but the question for us is would it dissuade a reasonable employee and it it wasn't clear to me from the record that she knew she had the job the second the new job when the reference was denied at this the record is not super clear on that and I wanted to get your your position on that I think the record might be a little unclear about that your honor but but the evidence was clear that she she didn't believe that she needed it and so the context here again is relevant that initially the employer offered both wease and the plaintiff a severance package or a reference was offered in connection with that the plaintiff rejected that but even after that her supervisor texted her and Matt Weese and said please let me know if there's anything I can do to help you and even then she didn't ask for a reference it was later that she then went to the HR department to ask for a reference but the bottom line here is there's right there's testimony from from the company saying you know we we authorized the woman in the HR department mrs. Christmas we authorized her to give a reference and that would have been fine but the plaintiff testifies no mrs. Christmas told me on the phone that people have been pressuring her not to give a reference and miss Christmas testified the reason I didn't give a reference was because of the litigation what do I do with all that is that a dispute of fact about about this question that's of importance it's not your honor because even if there are concerns about whether there's material adversity it still has to be because of the protected activity and noon and herself said that she just assumed it was because of the protected activity and she did not know that it in fact was she had Christmas that it was because of the litigation well and the lid that's because they were already in suit it's not because of the complaint by that point they were already in suit which is why I think she felt like she had to ask a question but the bottom line here is that a reasonable distinction it I think I think that it is your honor I mean what once you're in is asking you for a reference I think that an employee in that situation it would be reasonable for them to ask where they whether they could do it but the evidence also was is that sure I that's a it might be reasonable for an employer I'm just saying can I can I draw the inference that oh they were distinguishing between you know well maybe we don't want to give a reference to someone who's suing us for other totally legitimate reasons rather than for a retaliatory reason I mean we're at summary judgment do I how do I draw that inference well number one I think that really the court doesn't even need to engage in that but rather needs to focus on the fact that noon and herself said she didn't think she needed the reference and she got a job without it so there was no significant harm that was caused to her if any harm at all it was also again that gets back to this question about materially first is it is that what the standard means that like no harm no foul like in the end it hurt the plaintiff or is it that it would deter a person of reasonable firmness from reporting at this activity again even if it ultimately didn't hurt this particular individual right there does have to be some type of significant harm that would rise to a level to dissuade someone here there could be no dissuasion because the company had already offered her a neutral reference and so what the district court said was she refused the offer of a neutral reference she then refused the offer from her supervisor for assistance and then we have a situation where she said well I didn't really need it anyway because I got a job but even so we have to look at material adversity but we also have to see whether it was because of the complaint about pay disparity and noon and herself admitted that she couldn't link it to the pay disparity she simply she simply thought that was the reason that that could only be the other reason she had had two other opportunities to get a neutral reference so ultimately the district court said the difference between a neutral reference and no reference was insignificant it didn't rise to the level of material adversity that would trigger a retaliation claim so that was and I think that that's an appropriate way to analyze it given these this context where the neutral reference was offered to her and she didn't accept it so for these reasons if there are no further questions we would ask that the district court's decision be affirmed in in all respects thank you thank you your honors I just quickly wanted to touch on judge Richardson's questions about sort of and about the statistics and the pattern in practice so this is not a pattern in practice case a pattern in practice case is a distinct analytical framework for which through which we judge class actions I don't even think in this district that you can bring an individual pattern and practice case it's a framework by which class actions if you can establish a pattern and practice of discrimination at an employer then the burden of proof is switched to the employer to prove that the individuals part of this class were not subject to that pattern of practice and that's not what we have here and interestingly what the u.s. can I can I can I actually stop you and ask you a question because I had um sort of a similar question that I mean I think you are right that we have never said you don't have to have comparator evidence but in a case like this where what you have is like these salaries or I think it's four people in a marketing department without a relevant comparator if you can't say any of these women is doing work comparable to the one man in the pool then then I guess I'm not clear on how much well what if anything you can infer about discrimination from the fact that one member of this small marketing team is being paid closer to market rate than the others if they're not similarly situated with respect to their jobs like how do we know how how can the jury infer that is because of sex and not because of something like supply and demand like it just turns out to be really hard to find a good graphic designer so you have to pay them more I understand your honor because of the seven factors which include which include that the mathematical analysis which was very important in Gunther and Lindsay and and interestingly in in Lindsay there was only one woman and to compare to I thought they were all the court kept referring to those as peer jobs like they're all doing basically the same job and the one thing we know given the procedural posture of this case is they are not doing the same jobs so I think what the Second Circuit was very clear about Lindsay was that they were not doing the sort of Equal Pay Act light analysis because they were doing different jobs and if it's the Equal Pay Act equal work or the similarly situated under Title 7 they have to be am I wrong that the court kept referring to them as peer peer jobs I'm sure that they did but I don't think that that is similarly situated no not similarly situated I don't believe that they were categorizing them as similarly situated because they would not have been similarly situated they were very distinct jobs one is like the vice president of quality control and one is like the vice president of sales they were while they were all in the vice presidential level they were not doing similar jobs and I don't think in any circuit would they qualify as similarly situated under the under the analysis the sort of Equal Pay Act light analysis they just would not but at least you have something right at least they're all doing they're all in the same place on the org chart they all have a similar title like this is just four people doing four different jobs more people all in the marketing department all under the same supervisor who in that instant when she was trying to determine by the method that she deemed best she was asked in the record well were you just making up these numbers were you fine she's like no I was trying to do the best I could and it doesn't matter that the methodology that's the methodology they chose to use to evaluate these people in that instance and when you look at that the instance of that decision you have to ask why are all these women treated worse under your own methodology that's the methodology they chose and why is it they who chose this methodology so Ms. Petrick said that she went to salary.com and glassdoor.com Melanie Christmas the HR director confirmed that that is their usual policy to do to do that analysis and I believe at in the Joint Appendix at 700 the CEO Kam Knight testified that they they use the suggestion of the the managing supervisor to determine what the salary is so that's their normal process so she was going through their normal process to do that one thing I would point out another you have the silence you have the shame you have not following you just described your work at your colleague said what you call statistical information is not statistical at all and then you changed in reply and called it mathematical information do you agree that it's not statistical but it's it's merely like what you've done is like a math question which is like not the same thing as a statistical analysis I think math math I adopted the term statistical evidence I went and thought about that because that's what the court called it Lindsay and Lindsay they said full stop that's enough for us but it's really it's not the statistical evidence in terms of like you think of like a multivariant that's what I statistical in the way we would think of the term statistics correct your honor it's not like a multivariant analysis which I think is what in the teamster the United States the teamsters case with which said we approve of use of statistical evidence it's not that sort of multivariant analysis where you have sort of this that's what they were worried about is that you have devoid of any factual basis you just have someone doing an analysis of like you know race or sex and and and salary and then doing this sort of multivariant analysis to come up is it what's the p-value and I don't know much about statistics but I understand that's the important that's the important is it above point one or is it not above point one and so is it significant and I see that my time is expired so unless there are any more questions thank you very much I'm sorry we can't come down and shake hands but we thank you for your help today and wish you the best and we're ready to adjourn court for the day this honorable court stands adjourned until tomorrow morning God save the United States in this honorable court
judges: Pamela A. Harris, Julius N. Richardson, Allison J. Rushing